IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROBERT M. SINCLAIR,

    Plaintiff,

v.                                                                    CV 14-606 WPL/KBM

ZURICH AMERICAN INSURANCE COMPANY,

    Defendant.

**ORDER**

    Robert Sinclair, an employee of SAIA, a large commercial trucking company, sustained injuries when he was struck by an underinsured motorist while making a delivery for SAIA on September 4, 2012, in Albuquerque, New Mexico. Sinclair settled with the insurance carrier for the underinsured motorist and received its policy limits of $50,000. Sinclair then made a claim for underinsured motorist benefits under the commercial automobile policy SAIA purchased from Zurich American Insurance Company. Zurich denied the claim based upon SAIA's rejection of uninsured motorist coverage in New Mexico. This denial led Sinclair to file suit for a declaratory judgment that SAIA's rejection of uninsured motorist coverage is not valid under New Mexico law.

    Zurich filed a motion for summary judgment and Sinclair subsequently filed a cross-motion for summary judgment, both arguing that they are entitled to summary judgment under New Mexico law. (Docs. 39, 42.) Sinclair's motion was not filed by the deadline set for such motions, and Zurich argues that it should be denied for this reason. While Sinclair offered no explanation for his failure to timely file the motion, both parties agree the relevant facts are not

in dispute and Zurich has failed to identify any prejudice it will suffer if I consider Sinclair's motion. Sinclair has also filed a motion requesting that I certify a question of law to the New Mexico Supreme Court for resolution. (Doc. 43.)

Uninsured motorist and underinsured motorist (UM/UIM) coverage in New Mexico is governed by N.M. STAT. ANN. § 66-5-301 and its implementing regulation, N.M. ADMIN. CODE 13.12.3.9, and the many New Mexico decisions that interpret them. The purpose of New Mexico's UM/UIM statute is to expand such coverage in New Mexico to protect the public from damages caused by uninsured or underinsured motorists. *Marckstadt v. Lockheed Martin Corp.*, 228 P.3d 462, 467 (N.M. 2009). The New Mexico Supreme Court has "long applied a 'qualitatively different analysis'" to UM/UIM issues than it uses when it construes other types of statutes and insurance policies, and as a result has liberally construed the statute and regulation for their remedial purposes. *Jordan v. Allstate Ins. Co.*, 245 P.3d 1214, 1219 (N.M. 2010) (citation omitted). "The provision of the maximum possible amount of UM/UIM coverage in every insurance policy is the default rule, and any exception to that rule must be 'construed strictly to protect the insured.'" *Id.* (quoting *Romero v. Dairyland Ins. Co.*, 803 P.2d 243, 245 (N.M. 1990)).

Zurich's first argument for summary judgment is that SAIA's rejection of UM/UIM coverage is valid because the rejection satisfied what it identifies as the "two requirements in New Mexico for a rejection of UM/UIM coverage to be effective when the named insured is a corporation." (Doc. 39 at 5.) According to Zurich, those two requirements are that 1) Zurich was required to offer UM/UIM coverage to SAIA in amounts ranging from the statutory minimum coverage up to the limits of SAIA's liability coverage, and 2) SAIA's rejection of UM/UIM coverage is required to be in writing and "endorsed, attached, stamped or otherwise made a part"

of SAIA's policy. (*Id*. at 5-6.) According to Zurich, it is entitled to summary judgment because both requirements were met in this case.

In the brief in support of its motion, Zurich fails to cite a single case that supports its argument that there are only two requirements for a valid rejection of UM/UIM coverage by corporations in New Mexico. Zurich further fails to cite any authority to support its claim that New Mexico applies different standards when sophisticated corporate parties attempt to reject UM/UIM coverage. Zurich has not cited cases in support of these propositions because New Mexico law specifically rejects such a distinction.

Zurich fails to disclose in its brief that the New Mexico Supreme Court has considered and rejected any distinction between individuals and corporate insureds when considering the rejection of UM/UIM coverage. In *Marckstadt*, both Lockheed Martin Corp. and Capitol Motor Co. made the same argument that Zurich makes here: that different standards for rejection of UM/UIM coverage should apply to sophisticated commercial parties than apply to individual policyholders. 228 P.3d at 472. Sophisticated commercial parties such as SAIA may have a much better understanding of uninsured motorist coverage than individual purchasers of insurance coverage, who the courts of New Mexico assume will have limited knowledge and understanding of insurance law. *See Progressive N.W. Ins. Co. v. Weed Warrior Servs*., 245 P.3d 1209, 1213 (N.M. 2010). However, *Marckstadt* rejected this distinction because neither § 66-5-301 nor N.M. ADMIN. CODE 13.12.3.9 "contains any hint of differing standards for commercial, as opposed to individual, policies." *Id*. Further, because the rejection of UM/UIM coverage places burdens on the insurer, not the insured, the court could not consider the sophistication of the insured. *Id*.

At oral argument counsel for Zurich claimed that *Marckstadt* had been implicitly overruled on this point by the New Mexico Supreme Court's decision one year later in *Jordan*. *Jordan* cites *Marckstadt* ten times and gives no hint that it implicitly overruled *Marckstadt* on this or any other point. Instead, *Jordan* set out the technical requirements for a valid rejection of UM/UIM coverage in an amount equal to liability limits, as required by *Weed Warrior*, which was issued the same day as *Jordan*. 245 P.3d at 1217. Further, contrary to counsel's argument that *Jordan* only set requirements for the rejection of UM/UIM coverage in personal automobile policies, one of the consolidated cases in *Jordan* involved a commercial policy, and *Jordan* does not distinguish that commercial policy from the personal policies issued to the other plaintiffs. *Id.* at 1218. The omission of any discussion of *Marckstadt* in Zurich's brief is significant. To comply with their obligations under the Rules of Professional Conduct, counsel may not wait until their Reply brief or oral argument to discuss controlling law: they must cite such law and attempt to distinguish it or argue that it should be modified or reversed. NMRA Rules 16-301, 16-303(A).

Counsel for Zurich then compounds their problem by citing *Jaramillo v. Providence Washington Ins. Co.*, to argue that, if the premium-paying insured and the insurer agree that the insured did not intend to purchase coverage, the intent of the parties should be controlling. 871 P.2d 1343, 1347-48 (N.M. 1994). Thus, according to Zurich, because SAIA and Zurich both agree that SAIA intended to reject UM/UIM coverage, there is no UM/UIM coverage under the SAIA policy. Counsel for Zurich has once again failed to disclose legal authority in New Mexico directly adverse to this argument. *See* NMRA Rule 16-303(A)(2). *Jaramillo* involved whether employees of an insured corporation could stack UM/UIM coverages. 871 P.2d at 1345. This case, however, does not involve stacking but involves whether UM/UIM coverage exists.

*Marckstadt* likewise involved questions of coverage and not stacking, and specifically distinguished *Jaramillo* because it involved stacking of UM/UIM coverages. 228 P.3d at 472. As the court stated, "[u]nlike the availability of policy stacking in *Jaramillo*, the question of the presence of UM/UIM coverage under an automobile liability policy is not a question of intent." *Id*. When a case involves questions of coverage, the issue is whether a rejection of UM/UIM coverage conforms to the requirements of § 66-5-301 and N.M. ADMIN. CODE 13.12.3.9; and the intent of the parties is not relevant to this issue. *Id*. Counsel had an obligation to cite *Marckstadt* and argue that it was somehow distinguishable or otherwise should be modified or reversed.

Perhaps anticipating that I would quickly see through its first subterfuge, Zurich next argues that it is entitled to summary judgment because SAIA's rejection of UM/UIM coverage met the four requirements set out in *Jordan* for a valid rejection of UM/UIM coverage in New Mexico. Under *Jordan*, an insurer must 1) offer the insured UM/UIM coverage equal to the policy's liability limits, 2) inform the insured about the premium costs corresponding to the minimum and maximum amounts of UM/UIM coverage and any other levels of UM/UIM coverage offered to the insured, 3) obtain the insured's written rejection of UM/UIM coverage, and 4) incorporate the rejection into the policy in a way that affords the insured a fair opportunity to reconsider the decision to reject. 245 P.3d at 1221. If the insurer does not meet these requirements, the policy will be reformed to provide UM/UIM coverage equal to the policy's liability limits. *Id*.

While Sinclair raises several arguments about how SAIA's rejection runs afoul of these requirements, I will focus only on the second requirement, that Zurich must have informed SAIA about the premium costs corresponding to each available option for UM/UIM coverage offered

by Zurich.[1] Zurich contends that it satisfied this requirement because it provided SAIA with a formula that SAIA could use to calculate the relative costs of such coverage and that it advised SAIA about how SAIA could obtain information about the actual costs of the UM/UIM coverage. These actions fall far short of compliance with the premium disclosure requirement.

Under New Mexico law, an insurer is required to meaningfully offer UM/UIM coverage and the insured must knowingly and intelligently act to reject such coverage before it can be excluded from an insurance policy. *Marckstadt*, 228 P.3d at 468. Concerned that insurers continued to offer UM/UIM coverage in ways that are not conducive to allowing the insured to make a realistically informed choice, *Jordan* "detail[ed] for the first time the technical requirements for a valid rejection of UM/UIM coverage in an amount equal to liability limits." 245 P.3d at 1222. Under *Jordan's* second requirement, insurers must provide the insured with "the premium charge for [the] maximum amount of UM/UIM coverage" available, the "premium cost for the minimum amount of UM/UIM coverage allowed by Section 66-5-301(A) . . . as well as the relative costs for any other levels of UM/UIM coverage offered to the insured." *Id.* at 1221. "[B]y including premium prices for each available UM/UIM coverage level, insurance carriers meaningfully enable consumers to make a knowing and intelligent purchase or rejection of UM/UIM coverage." *Id*. The court concluded that "[r]equiring insurers to provide a list of coverage options with corresponding costs actually enhances freedom of contract because insureds' expectations will be met and they will get exactly what they consciously choose to pay for." *Id*. Applying this principle to the rejection of UM/UIM coverage signed by the Jordans, the

---

[1] Insurers were first alerted to the premium disclosure requirement in *Montano v. Allstate Indem. Co*., 92 P.3d 1255, 1260-61 (N.M. 2004), which involved stacking UM/UIM coverages. *Jordan* followed *Montano* by requiring the disclosure of premium charges for each available level of UM/UIM coverage offered to the insured. *Whelan v. State Farm Mut. Auto. Ins. Co*., 329 P.3d 646, 653 (N.M. 2014).

court held that the rejection was insufficient as a matter of law because the rejection forms "did not provide the premium costs for each available coverage option." *Id*. at 1223.

Zurich relies upon *Curry v. Great Northwest Ins. Co*., 320 P.3d 482 (N.M. Ct. App. 2013) as support for its argument that the information it provided to SAIA meets the premium disclosure requirement. According to Zurich, New Mexico law does not prescribe any one particular way that information about UM/UIM coverage must be provided to an insured, and recognizes that such information could be provided through an insurer's website or from an insurance agent. *Id*. at 488. *Curry* is easily distinguishable from the present case. First, there was no dispute in *Curry* that the insurer properly provided information about UM/UIM coverage and the premiums for such coverage in writing to the insured when the purchase of the policy was being considered. *Id*. at 484. Second, *Curry* involved a different issue: whether New Mexico law requires an insurer to provide UM/UIM coverage options and the corresponding premium information on the written rejection form delivered to the insured. *Id*. at 484. Third, in answering this question in the negative, *Curry* reaffirmed *Jordan's* requirement that insurers must offer UM/UIM coverage in a meaningful way by "providing the insured with a menu of coverage options and corresponding premium costs." *Id*. at 486. Rather than requiring insureds to take actions to determine UM/UIM premiums, the "*Jordan* Court intended to require insurers to fully inform their insureds regarding UM/UIM coverage options and corresponding premium costs." *Id*. at 488.

SAIA had no obligation to use a formula to calculate the premiums for UM/UIM coverage or to contact Zurich or the insurance broker to get additional information about the cost of the premiums. Under New Mexico law, the burden is not on the insured to request information about UM/UIM coverage. Insureds cannot make an informed decision about UM/UIM coverage

"without first receiving information from the insurance company." *Weed Warrior Servs.*, 245 P.3d at 1213. And other recent cases recognize that the burden is on the insurer to provide the premium costs for all levels of UM/UIM coverage offered to the insured. *Whelan*, 329 P.3d at 653 (*Jordan* requires insurers to disclose "the premium charges corresponding to each available option" of UM/UIM coverage); *Jaramillo v. Gov't Emps. Ins. Co.,* 573 F. App'x 733, 748 (10th Cir. 2014) ("*Jordan* does, of course, require that insurers provide the *premium costs* when offering UM/UIM coverage.")

While corporate insureds may reject UM/UIM coverage for their employees, they must do so in accordance with New Mexico law. *Marckstadt*, 228 P.3d at 469. It is hard to imagine that the New Mexico Supreme Court could have been much more specific about an insurer's duty to properly disclose the cost of UM/UIM coverages: "By requiring insurance carriers to list premium costs corresponding to each available UM/UIM coverage level, we are providing specific guidance concerning the form and manner that valid offers and rejections of UM/UIM insurance must take to comply with" § 66-5-301 and N.M. ADMIN. CODE 13.12.3.9. *Jordan*, 245 P.3d at 1222.

Because New Mexico law provides a coherent basis for resolving the issues presented in this case, *Jaramillo*, 573 F. App'x at 750, I deny Sinclair's motion to certify the issues to the New Mexico Supreme Court. Applying the substantive law of New Mexico as I must in this diversity case, *id*. at 738, I find that Zurich failed to properly inform SAIA about the costs of the premiums for UM/UIM coverages available under New Mexico law. Thus, SAIA's rejection of UM/UIM coverage is not valid under New Mexico law, and SAIA's policy will be reformed to provide UM/UIM coverage equal to the policy's liability limits. Zurich's motion for summary judgment is denied, and Sinclair's cross-motion for summary judgment is granted.

IT IS SO ORDERED.

_William P. Lynch_
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.