# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ROBERT M. SINCLAIR,

       Plaintiff,

v.                                          CV 14-606 WPL/KBM

ZURICH AMERICAN INSURANCE
COMPANY,

       Defendant.

## ORDER DENYING MOTION TO AMEND

Robert Sinclair has filed a motion to amend his Complaint to add claims of bad faith and unfair insurance practices against Zurich American Insurance Company to complement his breach of contract claim for Zurich's denial of underinsured motorist benefits. (Doc. 65.) Zurich opposes the amendment, arguing that it should be denied because Sinclair's motion to amend is untimely and the new claims are futile. (Doc. 67 at 6-11.) The parties also contest whether Sinclair may rely upon Zurich's litigation conduct in filing a motion for summary judgment as evidence of bad faith, an apparent issue of first impression in New Mexico.

Sinclair's motion to amend is governed by Federal Rule of Civil Procedure 15(a).[1] After a responsive pleading has been served, a party may amend his pleadings only by leave of court or with written consent from the opposing party. FED. R. CIV. P. 15(a)(2). "The court should freely give leave [to amend] when justice so requires." *Id*. A court may refuse to grant leave to amend when the opposing party shows undue delay, undue prejudice, bad faith or dilatory motive,

---

[1] Since a scheduling order has been entered, Sinclair's motion is actually governed by Rule 16(b)(4), which would require Sinclair to show good cause for modification of the scheduling order plus satisfaction of the Rule 15(a) standard. *Gorsuch, LTD v. Wells Fargo Nat. Bank,* 771 F.3d 1230, 1240-41 (10th Cir. 2014). Since the parties have not discussed the applicability of Rule 16, I will address the issue through the prism of Rule 15.

failure to cure deficiencies by previously granted amendments, or futility of amendment. *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). It is well settled in the Tenth Circuit "that untimeliness alone is a sufficient reason to deny leave to amend, especially when the party filing the motion has no adequate explanation for the delay." *Id*. at 1365-66 (citations omitted). Further, "[a] proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Inv'rs Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999).

While Rule 8(a)(2) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," the Supreme Court clarified this standard in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012). While the *Twombly/Iqbal* standard does not require significantly heightened fact-pleading in a complaint, the standard is more than a minimal change from prior jurisprudence and is instead a middle ground. *Id*. at 1191. Under this standard, to withstand a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, "'to state a claim for relief that is plausible on its face.'" *Id*. at 1190 (quoting *Twombly*, 550 U.S. at 670). A court must first identify those allegations in the complaint that are not entitled to the assumption of truth. *Id*. Thus, allegations which are legal conclusions, bare assertions, conclusory statements or "'a formulaic recitation of the elements of a cause of action' will not suffice." *Id*. at 1191 (quoting *Twombly*, 550 U.S. at 555). The court must then determine "whether the remaining, factual allegations plausibly suggest the defendant is liable." *Id*. In determining whether a complaint states a plausible claim for relief, the court will consider the nature and specificity of the allegations based on the claims asserted in the case. *Id*.

2

To prove a first-party claim for bad faith failure to pay his claim, Sinclair must prove that Zurich's reasons for denying payment of his claim were frivolous or unfounded. *Sloan v. State Farm Mut. Auto. Ins. Co*., 85 P.3d 230, 236 (N.M. 2004); UJI-Civ. 13-1702 N.M.R.A. (West 2015). The terms "frivolous or unfounded" mean "an arbitrary or baseless refusal to pay, lacking any support in the wording of the insurance policy or the circumstances surrounding the claim." *Sloan*, 85 P.3d. at 237. "Frivolous and unfounded" in this context "does not mean "erroneous" or "incorrect" . . . [i]t means an utter or total lack of foundation for an assertion of nonliability." *Id*. (quoting *Jackson Nat'l Life Ins. Co. v. Receconi*, 827 P.2d 118, 134 (N.M. 1992)). An insurance company has a right to deny a claim without exposure to a bad faith law suit if it has reasonable grounds to deny coverage. *Hauff v. Petterson*, 755 F. Supp. 2d 1138, 1145 (D.N.M. 2010); *American Nat. Prop. & Cas. Co. v. Cleveland*, 293 P.3d 954, 958 (N.M. Ct. App. 2012).

Sinclair also proposes to add a claim that Zurich's actions in denying his claim violated the Unfair Insurance Practices Act, N.M. STAT. ANN. §§ 59A-16-20 et seq. (West 2015). The Act provides a statutory cause of action for a party injured by one of the enumerated unfair claims practices set out in the Act. *Id*. at § 59A-16-30; *Hovet v. Allstate Ins. Co*., 89 P.3d 69, 71 (N.M. 2004); UJI-Civ. 13-1706 N.M.R.A. Among other requirements, insurers are required to attempt in good faith to effectuate "prompt, fair and equitable settlements of an insured's claim in which liability has become reasonably clear." § 59A-16-20(E). As with bad faith cases, insurers under the Act are not required to settle in all instances, and may contest cases they believe have no merit or are overvalued. *Hovet*, 89 P.3d at 78.

When considering a motion to dismiss, the court must look within the four corners of the complaint, accept as true all well-pleaded allegations, and determine if the plaintiff is plausibly entitled to relief. *Iqbal*, 556 U.S. at 678. Sinclair's proposed amended complaint is oddly bereft

of factual allegations that would support claims for bad faith or violations of the Unfair Insurance Practices Act. After setting out the facts of the underlying accident, Sinclair alleges that he made a claim on Zurich for underinsured motorist ("UIM") benefits and Zurich denied his claim, contending that the insurance policy excluded coverage for UIM benefits in New Mexico. Sinclair also asserts that he requested a complete certified copy of the Zurich policy, but Zurich failed or refused to provide a complete copy prior to suit being filed and the portions of the policy Zurich provided do not properly reject UIM benefits under New Mexico law. Sinclair next claims in conclusory fashion that Zurich acted in bad faith when it failed to timely and fairly investigate, evaluate, settle or pay his claims, and further failed to timely communicate its position to Sinclair concerning his claim. Sinclair further contends that Zurich violated the Unfair Insurance Practices Act, and simply parrots the language of the Act, claiming that Zurich misrepresented facts and policy provisions; failed to acknowledge and/or act reasonably act promptly on Sinclair's communications; failed to have reasonable standards for the prompt investigation and processing of his claim; failed to promptly, fairly and equitably settle his claim once liability became reasonably clear; compelled him to institute litigation to recover amounts due under the policy; and failed to promptly provide a reasonable basis for denying his claim.

Sinclair has adequately alleged that Zurich denied UIM benefits under the policy, but the proposed amended complaint does not set out sufficient facts that plausibly suggest that Zurich acted in bad faith or in violation of the Unfair Insurance Practices Act. Sinclair's rote recitation that Zurich acted in bad faith and in violation of the Act are exactly the type of conclusory statements and legal conclusions that have been rejected by courts. *See, e.g.*, *Khalik*, 671 F.3d at 1193.

Strangely, both Sinclair and Zurich allege a few additional facts in their briefing that are not found in the proposed amended complaint. The additional facts are that Sinclair made his claim to Zurich for UIM benefits on October 31, 2013. On November 1, 2013, State Farm, the liability insurer for the tortfeasor, offered its policy limits to settle Sinclair's liability claim. On November 4, 2013, Zurich denied the claim on the ground that SAIA, Sinclair's employer, had rejected UIM coverage in New Mexico, and provided certain parts of the policy to Sinclair to demonstrate that SAIA had rejected UIM coverage in New Mexico. Sinclair requested permission from Zurich to accept the policy limits, and on December 20, 2013 Zurich gave such permission. Sinclair alleges that he repeatedly requested a certified copy of Zurich's policy, and on February 14, 2014, Zurich sent copies only of the New Mexico portion of the policy to Sinclair. After Sinclair filed suit on May 4, 2014, Zurich, as part of its initial disclosures, produced an entire copy of the insurance policy, and later responded to Sinclair's requests for admissions. Sinclair takes particular aim at the motion for summary judgment that Zurich filed, which claimed that SAIA validly rejected UIM coverage under New Mexico law.

Even if I consider the additional facts alleged in the briefing I would reach the same conclusion. Sinclair claims that, in its motion for summary judgment, Zurich knowingly or negligently misrepresented and failed to disclose controlling New Mexico case law in its briefing, and that this litigation misconduct is evidence of Zurich's continuing bad faith in this case. As I made clear when denying Zurich's motion for summary judgment, Zurich's counsel ignored controlling New Mexico case law when arguing for summary judgment under the facts presented in this case. *Sinclair v. Zurich Am. Ins. Co.*, 2015 WL 3830361, at *2 (D.N.M. June 22, 2015). While New Mexico has a robust body of case law on insurance bad faith, it has not yet considered whether an insurer's conduct during litigation may be admissible as evidence of bad

faith. This topic has been discussed in numerous cases and articles. More recent cases include *Timberlake Const. Co. v U.S. Fidelity & Guar. Co.*, 71 F.3d 335 (10th Cir. 1995); *Parsons v. Allstate Ins. Co.*, 165 P.3d 809 (Colo. App. 2006); *Knotts v. Zurich Ins. Co*., 197 S.W.3d 512 (Ky. 2006); *Dakota, Minnesota & Eastern R.R. Corp. v. Acuity*, 771 N.W.2d 623 (S.D. 2009); *Barefield v. DPIC Cos.*, 600 S.E.2d 256 (W. Va. 2004). *See also* Scott Turner, Alex B. Mahler, and Rosanne Stafiej, *The Decline of the So-Called Doctrine of Continuing Bad Faith*, 43 TORT TRIAL & INS. PRAC. L.J. 199 (2008); Randy Papetti, Note, *The Insurer's Duty of Good Faith in The Context of Litigation*, 60 GEO. WASH. L. REV. 1931 (1992).

I believe that New Mexico courts would recognize that an insurer's duty to act in good faith does not end when its insured files suit against it, although the insurer and insured begin an adversarial relationship at that time. *Knotts*, 197 S.W.3d at 517; *Palmer by Diacon v. Farmers Ins. Exch*., 861 P.2d 895, 913 (Mont. 1993); *Durham v. Guest*, 171 P.3d 756, 760-61 (N.M. Ct. App. 2007), *rev'd on other grounds,* 204 P.3d 19 (N.M. 2009). New Mexico courts would recognize that an insurer has an obligation to timely reassess its initial decision to deny coverage based upon information received subsequent to the initial decision, even if that information is received after suit is filed. *See Knotts*, 197 S.W.3d at 523; *Acuity*, 771 N.W.2d at 633. Because bad faith may encompass an entire course of conduct, New Mexico courts would hold that an insurer's conduct that occurs after the filing of a complaint may be relevant to show a continuation of the same difficulties that preceded the filing of the complaint. *Dale v. Guaranty Nat. Ins. Co.*, 948 P.2d 545, 553-54 (Colo. 1997) (plaintiff claimed that insurer acted in bad faith when it used an unreasonable form of payment (a nine-party check) and then delayed payment for two months after she returned the check); *Gooch v. State Farm Mut. Auto. Ins. Co*., 712

N.E.2d 38, 40 (Ind. Ct. App. 1999) (plaintiff claimed that insurer had a policy to force low speed collision cases to trial to make it financially difficult for insureds to pursue recovery).

New Mexico would also recognize that an insurer can be held liable for violations of the Unfair Insurance Practices Act that occur after the filing of suit. *See Barefield*, 600 S.E.2d at 266. However, only insurance companies and their agents are proper defendants under the Act, and New Mexico does not recognize a cause of action against an insurer's attorney under the Unfair Insurances Practices Act. *Hovet*, 89 P.3d at 77; *Durham*, 171 P.3d at 765.

More stringent rules apply when plaintiffs attempt to introduce evidence of attorney conduct during litigation as evidence of bad faith. Insurers are entitled to zealous and effective representation by their attorneys in lawsuits filed by their insureds. *Timberlake Const. Co.*, 71 F.3d at 341. Jurors may not be able to evaluate the propriety and significance of normal litigation tactics such as depositions and other discovery techniques and the delay inherent in resolving a case through litigation. "Allowing litigation conduct to serve as evidence of bad faith would undermine an insurer's right to contest questionable claims and to defend itself against such claims." *Id.*; *see also Palmer*, 861 P.2d at 914-15; *O'Donnell v. Allstate Ins. Co.*, 734 A.2d 901, 908-10 (Pa. Super. Ct. 1999). It could also result in ethical dilemmas for attorneys representing insurers. *Hovet*, 89 P.3d at 77; *Parsons*, 165 P.3d at 817. Further, counsel's litigation strategy and tactics in defending a claim are likely not relevant to the insurer's earlier decision to deny coverage. *Timberlake Const. Co.*, 71 F.3d at 340; *Palmer*, 861 P.2d at 915; *Acuity*, 771 N.W.2d at 635.

The Federal Rules of Civil Procedure (and its state counterparts) and the Rules of Professional Conduct control the litigation process and, in most instances, provide adequate remedies for improper conduct during litigation. *Timberlake Const. Co.*, 71 F.3d at 341.

7

Significant sanctions for improper litigation conduct are available under Rule 11, Rule 26 and Rule 37, and, in appropriate circumstances, under a court's inherent powers. *Sun River Energy, Inc. v. Nelson*, ___ F.3d ___, ___ (10th Cir. Sep. 2, 2015); *Timberlake Const. Co.*, 71 F.3d at 341; *Parsons*, 165 P.3d at 817. Further, attorneys whose litigation conduct violates the Rules of Professional Conduct may be subject to professional discipline. *Parsons*, 165 P.3d at 817-18; *Knotts*, 197 S.W.3d at 522.

Some courts impose a blanket prohibition on introducing evidence of attorneys' litigation conduct to show an insurer's bad faith. *Knotts*, 197 S.W.3d at 522 (citing Montana case law); *Acuity*, 771 N.W.2d at 634 (citing cases from Arkansas, Missouri and Wyoming). It is not likely that New Mexico courts would adopt this approach. Instead, I believe that New Mexico courts would follow what appears to be the majority view that allows evidence of an attorney's litigation conduct to be admissible as evidence of bad faith in rare cases involving extraordinary facts. *See Federated Mut. Ins. Co. v. Anderson*, 991 P.2d 915, 922 (Mont. 1999) ("Generally, an insurer's litigation tactics and strategy for defending a claim are not relevant to the decision to deny coverage."); *see also Timberlake Const. Co.*, 71 F.3d at 341; *Parsons*, 165 P.3d at 818; *Palmer*, 861 P.2d at 915. In determining whether such conduct is admissible, a court will have to weigh its probative value against the risks of unfair prejudice and confusion of the issues for the jury. *Timberlake Const. Co.*, 71 F.3d at 341; *Parsons*, 165 P.3d at 818; *Palmer*, 861 P.2d at 915.

This is not the rare case with extraordinary facts that justifies allowing the introduction of Zurich's motion for summary judgment as evidence of bad faith. While New Mexico has a well-developed body of case law concerning UIM coverage, no case had presented exactly the same facts that were presented in this case, where Zurich provided insurance coverage to SAIA under a policy that covered the thirty four states where SAIA does business and where SAIA routinely

rejects UIM coverage when such a waiver of coverage is permitted. Further, New Mexico law concerning UIM coverage can be somewhat confusing, because the New Mexico Supreme Court has admittedly often changed, and significantly toughened, its requirements for insurers seeking to limit UIM coverage. *See, e.g.*, *Jordan v. Allstate Ins. Co.*, 245 P.3d 1214, 1222 (N.M. 2010) ("[W]e detail for the first time the technical requirements for a valid rejection of UM/UIM coverage in an amount equal to liability limits."); *Montano v. Allstate Indem. Co.*, 92 P.3d 1255, 1261 (N.M. 2004) ("We recognize that our holding described above is a new, and not easily foreshadowed, aspect to our jurisprudence on [UIM] stacking.")

Finally, Sinclair has never previously contended that Zurich was acting in bad faith in its handling of his case. Not only did Sinclair not allege bad faith when Zurich denied his claim for UIM coverage, he stipulated that the coverage issue should be bifurcated from the issue of damages and that the coverage issue should be resolved first. (Doc. 20.) Although Sinclair filed five briefs in connection with the summary judgment motions that he and Zurich filed and his motion to certify to the New Mexico Supreme Court, he never once suggested in that briefing that Zurich was acting in bad faith in filing or arguing its motion. In fact, Sinclair argued in his Reply Brief that I should certify the coverage issue to the New Mexico Supreme Court because the New Mexico Supreme Court's decision in *Marckstadt v. Lockheed Martin Corp.*, 228 P.3d 462 (N.M. 2009) "appears to be inconsistent with the Court's decision" one year later in *Jordan*, and "the *Jordan* decision adds another specific requirement for a valid rejection that was not mentioned in *Marckstadt*." (Doc. 52 at 5.)

Sinclair did not file a motion for sanctions concerning Zurich's arguments in support of its motion for summary judgment. FED. R. CIV. P. 11(c)(2). I have not hesitated in the past to impose sanctions under the Federal Rules of Civil Procedure when I thought they were

9

appropriate. *See Tom v. S.B., Inc.*, 280 F.R.D. 603 (D.N.M. 2012) (sanctions imposed on defendants and their attorneys for litigation misconduct); *Villa v. Dona Ana County*, 1:09-cv-976 BB-WPL (Docs. 129 & 135), *aff'd* 500 F. App'x 790 (10th Cir. 2012) (unpublished) (plaintiffs' case dismissed with prejudice as a sanction for multiple discovery abuses). While Zurich's attorneys exercised poor judgment in the presentation of their argument in support of the motion for summary, that conduct is appropriately addressed under the Federal Rules of Civil Procedures and Rules of Professional Conduct. To that end, I closely questioned Zurich's counsel during oral argument about their obligations to cite controlling New Mexico law. Further, in my Order I specifically cited the Rule of Professional Conduct violated by counsel for Zurich. I believe these actions were sufficient to deter repetition of this conduct by Zurich's counsel and to deter comparable conduct by other attorneys. FED. R. CIV. P. 11(c)(4).

Counsel's litigation conduct in arguing Zurich's motion for summary judgment should not be introduced as evidence of bad faith or a violation of the Unfair Insurance Practices Act by Zurich. Further, the probative value of such evidence is substantially outweighed by the risk of unfair prejudice and confusion of the issues for the jury. Without such evidence Sinclair has failed to state plausible bad faith and unfair insurance practices claims.

Because Sinclair's claims for bad faith and unfair insurance practices would be subject to dismissal, his motion to file an amended complaint is denied.

IT IS SO ORDERED.

William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.